# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

       Plaintiff,

     v.                                                                No.  09-CV-952 WJ/RHS

GENESCO, INC., d/b/a JOURNEY'S,

       Defendant,

   and

LAUREN TORRES,

       Plaintiff-in-Intervention,

     v.

GENESCO, INC., d/b/a JOURNEY'S,

       Defendant.

### MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT ON PLAINTIFF-IN-INTERVENTION'S STATE LAW CLAIMS

THIS MATTER comes before the Court on Defendant's Motion for Partial Summary Judgment on Alleged Intentional Torts Asserted in Complaint-in-Intervention (Doc. 86) and Defendant's Motion for Summary Judgment Regarding Plaintiff-in-Intervention's Emotional Distress Claims (Doc. 87). Genesco moves for summary judgment on Counts IV through VII of the complaint-in-intervention filed by Lauren Torres (Doc. 34). For the reasons explained below, the Court finds that the motions are well taken and shall be granted.

BACKGROUND

I.      **Procedural History**

The Equal Employment Opportunity Commission ("EEOC") brings this Title VII lawsuit against Defendant Genesco, a Tennessee corporation doing business in New Mexico, on behalf of female employees of Defendant alleging retaliation and hostile work environment based on gender. Lauren Torres was the only named employee class member in the original complaint (Doc. 1). Victoria Silva was added as a class member in EEOC's Amended Complaint (Doc. 12). In discovery, the EEOC disclosed Maria Martinez and Cassandra Brito as additional "class members." The EEOC has since withdrawn its designation of Brito as a putative class member. As a result, the EEOC's class currently consists of three members: Torres, Silva, and Martinez.

Torres filed an Intervenor Complaint on April 16, 2010 (Doc. 34). In her complaint, Torres alleges that she was sexually harassed by a supervisor, Adrian Marquez, in December 2007 and January 2008 during the course of her employment with Genesco. She alleges that after she complained of this behavior, in February 2008 she was subject to ridicule by her supervisors and coworkers and her work hours were decreased. Genesco moves for summary judgment on Counts IV though VII of the complaint-in-intervention. In Count IV, Torres brings a cause of action for tortious assault and battery; in Count V, tortious sexual contact; Count VI, negligent infliction of emotional distress; and in Count VII, intentional infliction of emotional distress. Genesco's liability for all of the above is founded on the doctrine of respondeat superior, based on the conduct of its employee, Marquez. The Court has supplemental jurisdiction over these state law claims by virtue of the counts brought under Title VI.

Genesco argues that the undisputed material facts show that it is not liable under a respondeat superior theory for the intentional torts of its employee. Genesco also argues that

Torres has not established the prima facie elements of these counts. The Court agrees that Genesco is not liable for the alleged intentional torts under respondeat superior, and will grant summary judgment accordingly. As for Count VI, Plaintiff has not stated a prima facie case for negligent infliction of emotional distress, and summary judgment will be granted on that claim as well.

## II.     Factual History

For the purposes of these motions, the undisputed facts are as follows. Torres began working in December 2007 at Journeys, a retail shoe store owned by Genesco. Marquez was a co-manager of this store, whose duties included selling shoes and accessories, organizing the stock room, and supervising employees during the manager's absence. Marquez began harassing Torres that December when she was taking a break from her employment at Journeys, by asking her for dates and kisses. The harassment continued when Torres returned to her work at Journeys. In January of 2008, Marquez's behavior worsened, and he began physically harassing Torres. On January 9th, he grabbed her and touched her buttocks, bit her shoulder, and bit her leg. Torres left her shift at Journeys to report this behavior shortly after it occurred to a manager of another Journeys store, Sean Oakley. On returning to work, Marquez instructed Torres to go to the stock room, where he cornered her as she was standing on a ladder and bit her buttocks. On January 12, Torres' manager, Benjamin Reyes, approached Torres to inquire about the harassment. After this conversation, Marquez came up behind her and bit her on the shoulder again. Marquez' employment with Journeys ended on January 12, but even after he no longer worked at Journeys, he repeatedly came into the store to harass Torres.

## LEGAL STANDARD

Summary judgment is only appropriate when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; it may not rest on mere allegations or denials in its own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249. A mere scintilla of evidence in the nonmovant's favor is not sufficient. *Id.* at 252.

## DISCUSSION

**I.      Respondeat Superior**

Torres seeks to hold Genesco liable for the intentional torts committed by its employee Marquez in Counts VI, V, and VII. The doctrine of respondeat superior allows a plaintiff to hold "an employer . . . liable for an employee's torts committed within the scope of his or her employment." *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 70 (N.M. 2004).

In New Mexico,

> [A]n act is within the "course of employment" if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or illadvisedly, with a view to further the master's interests, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.

*Gonzales v. Sw. Sec. & Protection Agency, Inc.*, 665 P.2d 810, 811 (N.M. Ct. App. 1983) (quoting *Miera v. George*, 237 P.2d 102, 105 (N.M. 1951)). Genesco argues that these

exceptions do not apply to this case, because sexual assault and battery in retail stores has nothing to do with the employer's interest in selling retail goods. Thus, sexual assault is neither "fairly and naturally incident to the business," nor is it "done while the employee is engaged upon the employer's business." In response, Torres offers several theories, none of which the Court finds persuasive.

Torres argues that because the mangers at Journeys instructed the employees to "flirt" with customers in order to sell shoes, such "flirting" was conduct "naturally incident" to the business and Marquez' actions were therefore committed in the course of his employment. First, Genesco points out that equating "flirting" with sexual assault is untenable. The Court would further add that to do so in fact minimizes the seriousness of Marquez' conduct towards Torres in this case. Marquez' sexual advances and physical contact with Torres are intentional torts, not a sales technique. Second, Journeys' instructions to "flirt" with customers cannot encompass the actions of a co-manager toward an employee. There is no evidence that Marquez' actions toward Torres were motivated by a desire to sell shoes; indeed, such a contention would be absurd. Torres has failed to rebut Genesco's argument that Marquez' actions arose from his own independent personal motivations.

Second, Torres argues that because Marquez used instrumentalities provided to him by Journeys, his conduct may be considered to "substantially arise out of an attempt to perform the employer's business." In *Gonzales v. Southwest Security and Protection Agency*, "not only did Southwest's employees beat a person, but the beating was facilitated by instrumentalities provided by Southwest." 665 P.2d at 812. Thus, the New Mexico Court of Appeals found that the security guards' "conduct was naturally incident to Southwest's business." *Id.* Torres argues that this case is similar, because Marquez "used" the narrow passages of the stock room and the

5

ladder to assault Torres while she was in a vulnerable position. A stock room and a ladder hardly equate to handcuffs and nightsticks used by security guards, however. In *Gonzales*, it is likely that the security guards could not have inflicted such injuries on the plaintiff absent the use of the instrumentalities provided to them by their employer, Southwest. Here, the very fact that Marquez assaulted and battered Torres on numerous occasions in numerous ways independent of his work at Journeys shows that it was not necessary for him to have made "use" of the "instrumentalities" provided by Genesco in the stockroom in Journeys.

      Finally, Torres argues that the "aided-in-agency" theory recognized by the New Mexico Supreme Court in *Ocana v. American Furniture Co.* should apply to this case as another exception to the rule that employers are not liable for the intentional torts of their employees. "Under the aided-in-agency theory, an employer may be held liable for the intentional torts of an employee acting outside the scope of his or her employment if the employee 'was aided in accomplishing the tort by the existence of the agency relation [between the employer and the employee].'" *Ocana*, 91 P.3d at 71 (quoting Restatement (Second) of Agency § 219(2)(d)). Torres argues that Marquez' status as her supervisor "gave Marquez the ability to act upon her" and commit these sexual assaults and batteries.

      This argument reads too much into the "aided-in-agency" test. While it is true that Marquez gave Torres directions to do certain things while she was working at the store – including go into the stock room where he cornered her on the ladder – the bare fact that his supervisory status "aided" him on this one occasion seems to read too much into the test as set forth in *Ocana*. That court rejected Ms. Ocana's claim because she "failed to present any evidence showing that [the employee's] conduct occurred as a result of an abuse of his supervisory status." *Id.* at 72. This Court believes that the best reading of the "aided-in-agency"

6

test supports Genesco's contention that since the harassment occurred before, during, and after the period in which Marquez was Torres' supervisor, his supervisory status could not have been the cause of the harassment. In other words, his conduct did not occur "as a result of" his supervisory status.

A different reading of this test would turn into strict liability for employers whenever a supervisor commits a tort upon an employee while the employee is on duty. The Restatement itself clearly does not contemplate this result. As the comment to § 219(2)(d) explains:

> Clause (d) includes primarily situations in which the principal's liability is based upon conduct which is within the apparent authority of a servant, as where one purports to speak for his employer in defaming another or interfering with another's business. Apparent authority may also be the basis of an action of deceit, and even physical harm. In other situations, the servant may be able to cause harm because of his position as agent, as where a telegraph operator sends false messages purporting to come from third persons. Again, the manager of a store operated by him for an undisclosed principal is enabled to cheat the customers because of his position.

Restatement (Second) of Agency § 219 cmt. e. It is not the case here either that Marquez' "apparent authority" enabled him to harass Torres, or that Marquez caused harm to Torres "because of" his position as her supervisor. The "aided-in-agency" exception should not swallow the rule of limited respondeat superior liability for intentional torts.

Thus, on the undisputed material facts, Genesco may not be held liable for Marquez' intentional torts of: tortious assault and battery (Count IV); tortious sexual contact (Count V); or intentional infliction of emotional distress (Count VII).

## II.      Negligent Infliction of Emotional Distress

In its second motion, Genesco moves for summary judgment on Count VI on the grounds that the complaint does not state a claim of negligent infliction of emotional distress ("NIED"). In New Mexico, NIED has been "limited to" the traditional situation wherein a plaintiff

witnesses a sudden traumatic injury to or the death of a family member caused by the defendant's negligence. *Castillo v. City of Las Vegas*, 195 P.3d 870, 876 (N.M. Ct. App. 2008). In her response, Torres does not offer any reasons why the Court should recognize an exception to this rule. Thus, summary judgment is granted as to Count VI of the complaint for failure to state a claim upon which relief may be granted.

**THEREFORE, IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment on Alleged Intentional Torts Asserted in Complaint-in-Intervention (Doc. 86) and Defendant's Motion for Summary Judgment Regarding Plaintiff-in-Intervention's Emotional Distress Claims (Doc. 87) are hereby GRANTED. Counts IV, V, VI, and VII of the complaint-in-intervention (Doc. 34) are dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE