# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

       Plaintiff,

   v.                                                               No. 09-CV-952 WJ/RHS

GENESCO, INC., d/b/a JOURNEYS,

       Defendant,

   and

LAUREN TORRES,

       Plaintiff-in-Intervention,

   v.

GENESCO, INC., d/b/a JOURNEYS

       Defendant.

**MEMORANDUM OPINION AND ORDER DENYING GENESCO'S MOTION FOR
SUMMARY JUDGMENT ON EXHAUSTION ISSUES
and
GRANTING MOTION ON MARIA MARTINEZ' CLAIMS OF SEXUAL
HARASSMENT UNDER TITLE VII**

      THIS MATTER comes before the Court upon Defendant Genesco's Motion for Partial Summary Judgment Regarding Plaintiff EEOC's Claims on Behalf of Maria Martinez, filed December 16, 2010 **(Doc. 96)**. Having considered the parties' briefs and the applicable law, I find that Defendant's motion is not well-taken and will be denied on the exhaustion issue, but is well-taken and will be granted as to Ms. Martinez' sexual harassment claims brought under Title VII.

**Background**

This is a Title VII case based on allegations of a sexually hostile work environment affecting a class of female employees. The lawsuit is brought by the Equal Employment Opportunity Commission ("EEOC") against Defendant Genesco on behalf of female employees of Defendant alleging retaliation and hostile work environment based on gender.[1] According to the Amended Complaint (Doc. 12), Defendant has been engaged in unlawful employment practices at its Albuquerque, New Mexico "Journeys" store in violation of Title VII since at least May of 2007. The alleged unlawful practices include the verbal and physical harassment of Lauren Torres and a class of female employees, including Victoria Silva and Maria Martinez, which created a hostile work environment for them based on their gender. The sexual harassment of Ms. Martinez allegedly included comments about the sales ability of women based on sex as well as unwelcome physical touching. The harassment of Ms. Martinez occurred during her employment with Defendant in 2007 and was allegedly done by Ms. Martinez' manager Tobias Cordova (with respect to the unwelcome touching) and her district manager Chris Cavnar (with respect to comments about the sales of women). Doc. 131 (Pretrial Order) at 6-7.

**Discussion**

The instant motion pertains to Ms. Martinez only. Defendant moves for partial summary on several grounds, including a failure to exhaust administrative procedures which the Court will address first.

**I.   Legal Standard**

Summary judgment is appropriate when there are no genuinely disputed issues of

---

[1] Genesco is a Tennessee corporation doing business in New Mexico. Am.Compl., ¶ 4.

material fact and, viewing the record in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law. *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007); *Boling v. Romer*, 101 F.3d 1336, 1338 (10th Cir. 1996). Once the party moving for summary judgment properly supports its motion, it is incumbent on the non-moving party to respond with some showing of an issue of genuine material fact. *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978 (10th Cir. 1991), *overruled on other grounds by Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1228 (10th Cir. 2000). The non-moving party may not rest on averments in its pleadings, but instead must establish specific triable issues. *Gonzales v. Miller Cas. Ins. Co. of Tex.*, 923 F.2d 1417 (10th Cir. 1991). The mere existence of some alleged, immaterial factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

**II.     Failure to Exhaust**

Defendant contends that the EEOC's claim regarding Ms. Martinez should be dismissed because the EEOC failed to exhaust necessary administrative procedures. The Complaint alleges that:

> Lauren Torres and a class of female employees of Defendant, including Victoria Silva, were subjected to sexual harassment by Adrian Marquez, a managerial official of Defendant Employer, which created a hostile work environment for them because of their sex, female.

Am. Compl. (Doc. 12) at 1. Genesco notes that the Complaint does not encompass any claims of Ms. Martinez or regarding Ms. Martinez' purported harasser, Tobias Cordova.

Title VII requires that the EEOC "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion" as a prerequisite to filing suit in federal court. 42 U.S.C. § 2000e-5(b). The administrative process

requires that the EEOC: (1) serve notice of the charge on the charging party; (2) investigate the charge; (3) determine after such investigation that there is reasonable cause to believe the charge is true; and (4) if reasonable cause is found, attempt to eliminate allegedly unlawful practices through conciliation. *Id.*

Genesco contends that the EEOC did not properly provide it notice about Ms. Martinez' allegations or conciliate them, as the law requires. Specifically, Defendants claim that (a) the EEOC impermissibly attempts to bootstrap Lauren Torres' claim into one on behalf of Ms. Martinez, even though Ms. Martinez was allegedly harassed at a different time and by a different Genesco employee; (b) there was no determination by the EEOC of reasonable cause to believe Martinez' charge is true; and (c) the EEOC never conciliated its claim regarding Ms. Martinez with Genesco, and thus Genesco had no meaningful opportunity to conciliate those claims.

A.      Scope of Charge

The initial charge arising from the Complaint involves Ms. Torres' allegations of sex discrimination and retaliation by Genesco managers at Journeys store #744 in the Cottonwood Mall. Ex. 5 (charge of discrimination).[2] Under the relevant case law, Ms. Martinez' claim is reasonably related to Ms. Torres' claim, despite the fact that Ms. Martinez was allegedly harassed by a different Genesco employee. The EEOC is permitted to enlarge the scope of the class as long as the basic charge of discrimination remained the same. *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1101 (6th Cir. 1984); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3rd Cir. 1984) ("[P]arameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge

---

[2] Plaintiff's Exhibits were filed separately as part of Doc. 115-1.

4

of discrimination, including new acts which occurred during the pendency of proceedings before the Commission.").

Ms. Martinez was also employed at store #744 and alleges sexual harassment by management officials, Tobias Cordova and Chris Cavnar. Further, Mr. Cavnar was the district manager while both women worked at that Journeys store. Ms. Martinez alleges the same basic type of discrimination at the same store location. This is typical of the type of claim which could reasonably be expected to grow out of the individual complaint of discrimination. *See, e.g.*, *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176 (4th Cir. 1981) (district court had jurisdiction over charges pertaining to all branches of bank, where EEOC investigated and attempted conciliation with regard to one branch). Defendant cites to *EEOC v. Outback Steak House of Fla., Inc*., 520 F. Supp. 2d 1250 (D.Colo. 2007), and *EEOC v. Jillian's of Indianapolis, Ind., Inc.*, 279 F. Supp. 2d 974 (S. D. Ind. 2003) for the proposition that the EEOC is expanding the scope of the initial claim beyond what is reasonable under the law. However, the issue in those cases was whether the EEOC's investigation and conciliation in a three-state area (*Outback*) or a limited facility (*Jillian's*) was sufficient to give notice of the national scope of the potential claims against defendants. The expansion in the instant case involves only an additional manager from the same store.[3]

B.     EEOC Determination

Genesco contends that the EEOC never determined that there is reasonable cause to

---

[3] The court in *Outback* held that the EEOC had not satisfied its burden of establishing jurisdiction over claims which were national in scope. However, the court found that the EEOC was not precluded from pursuing nationwide claims simply because the initial charges were regional in scope. 520 F.Supp.2d at 1261-62 ("the regional scope of the underlying charges does not – standing alone – prevent the EEOC from pursuing nationwide claims"). Rather, the court's holding was based on the fact that the EEOC did not provide sufficient notice to the employer that the charges were being expanded nationally.

believe that Ms. Martinez' charge is true. The EEOC points to its Determination Letter, which states:

> there is reasonable cause to believe that Respondent violated Section 703(a) of Title VII by subjecting Charging Party *and other female employees, including at least Victoria Silva*, *to unwelcome comments and conduct which created a hostile work environment for women employed by Respondent, because of their sex, female*.

Ex. 8 (emphasis added).

Contrary to Defendant's view, the EEOC does not need to identify all members of a potential victim class, as long as the employer was fully aware of the number of past and present female employees at that particular office during the relevant time period. *See EEOC v. David Lerner Assocs., Inc.*, Civ. No. 3:05-292 2005 WL 2850080, at *3 (D. Conn. Oct. 27, 2005); *EEOC v. Cone Solvents, Inc.*, Civ. No. 3:04-0841, 2006 WL 1083406, at *9 (M.D. Tenn. Apr. 21, 2006) ("As long as the outline of the class is identified, each female within the 'class' need not be specifically identified in the conciliation process."). In this case, the Determination Letter gave notice to Genesco that (1) there were other female employees affected by the alleged discriminatory practices and (2) the discriminatory practices were unwelcome comments and conduct which created a hostile environment for women. The Determination Letter does not limit allegations of unwelcome conduct and comments to a particular managerial employee, but directs the allegations against Genesco as the employer. In its response to interrogatories, the EEOC stated that Ms. Martinez is one of "other female employees" encompassed by its Determination Letter. Ex. F, resp. to interrog. 17 and 18. Ms. Martinez works at the same Journeys store as Ms. Torres, and was identified as a class member in one of Plaintiff's supplemental disclosures. Doc. 96-1 at 2 (dated July 23, 2010). Thus, it is not an unreasonable stretch to find that Defendant has been aware of the outline of the class since conciliation began, even where it involved primarily Ms. Torres.

6

C.      Conciliation by the EEOC

Defendant argues that the EEOC never conciliated its claim regarding Ms. Martinez with Genesco, and thus had no opportunity to conciliate such claims.

In this case, there was an attempt at conciliation by the EEOC regarding the alleged violations identified in the Determination Letter, and in connection with Ms. Torres' allegations. The issue is whether this attempt satisfied conciliation as to Ms. Martinez where Ms. Martinez was not individually identified prior to that conciliation. The majority of courts have held that the EEOC need not limit its class claims to those brought on behalf of claimants identified during conciliation. *See EEOC v. Rhone-Poulenc, Inc.*, 876 F.2d 16 (3d Cir. 1989) (EEOC not required to conciliate on behalf of each potential claimant); *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1185 (4th Cir. 1981) (holding the district court had jurisdiction over the same charges of discrimination against a single defendant even where the claims had been expanded to include different branches of the defendant's business).[4]

Here, the EEOC's Determination Letter that opened the conciliation process put Defendant on notice of the potential class involved in this case and the same type of discrimination alleged. Based on Ms. Torres' allegations, Defendant has been aware of the location of the alleged discriminatory conduct. This was sufficient to put Defendants on notice as to the potential class size, as Defendants could presumably have checked their own employment records for the relevant time period and begun their own investigation from there. *Cf. EEOC v.*

---

[4] In a similar case, this Court found issues of disputed facts regarding whether the EEOC engaged in "sincere and reasonable" efforts to conciliate this case. *See EEOC v. Sonic*, 1:09-cv-00953-WJ-ACT (D.N.M., Oct. 6, 2010, Doc. 44). The Court stayed the case pending further conciliation efforts. *See EEOC v. Zia Co.*, 582 F.2d 527, 533 (10th Cir. 1978) ("The inquiry into the duty of 'good faith' on the part of the EEOC is relevant to whether the court should entertain the claim, or stay the proceedings for further conciliation efforts . . . ."). In this case, however, Genesco does not challenge the EEOC's good faith in prior efforts to resolve the matter in conciliation, but rather only whether Ms. Martinez' claims are subsumed in that effort.

7

*David Lerner Assocs., Inc.*, Civ. No. 3:05-292 2005 WL 2850080, at *3 (D. Conn. Oct. 27, 2005) (EEOC did not need to identify all members of the potential victim class when the employer was fully aware of the number of past and present female employees at that particular office during the relevant time period); *EEOC v. Cone Solvents, Inc.*, Civ. No. 3:04-0841, 2006 WL 1083406, at *9 (M.D. Tenn. Apr. 21, 2006) ("As long as the outline of the class is identified, each female within the 'class' need not be specifically identified in the conciliation process.").

Accordingly, Defendant's motion is denied with regard to the legal issues of exhaustion.

## III. Severe or Pervasive Harassment

Under Title VII, 42 U.S.C. 2000e-2(a)(1), it is unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. Title VII's prohibition against sex discrimination includes a ban on sexual harassment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Ms. Martinez bases her claims of sexually hostile work environment on the alleged conduct of Tobias Martinez, an assistant manager at the Journeys store where Ms. Martinez worked, and also on comments allegedly made by district manager Chris Cavnar. The facts are largely undisputed.[5]

A.  Allegations of Physical Harassment by Tobias Cordova

Based on Ms. Martinez' statements in her deposition, the allegedly harassing conduct by Cordova consisted of Cordova tickling her, poking her on her side by her rib cage; and placing his hands on the side of her stomach near her rib cage. Ex. B at 14. Cordova's alleged touching and tickling of Ms. Martinez was over her clothes. *See id.* at 21:20-22, 30:5-12. 16. The conduct

---

[5] Plaintiff's additional statement of facts are contained in Doc. 115, as to all of Defendant's pending summary judgment motions.

8

occurred a few times a week during a two month period (May to July 2007) when Ms. Martinez worked part-time with Cordova before he was fired. *Id.* at 20:9-13 (firing), 21:23-22:2 (alleged touching), 29:18-24 (alleged tickling).[6] Other than Cordova, no other employees tickled or touched Martinez at Journeys. *Id.* at 14:18-22, 29:19-21.

B.     Allegations of Verbal Harassment by Chris Cavnar

At her deposition, Ms. Martinez state that her district manager, Chris Cavnar, made comments to women that "it should be easy for them to make sales." Ex. B at 12:19-13:23. Ms. Martinez stated that these comments "could be considered verbal harassment" because they show that Cavnar held women employees to a different standard than men. Ex. B (Martinez Dep.) at 13. Ms. Martinez complained about Cavnar's comments in August 2007 to Store Manager Benjamin Reyes. Doc. 116 (Martinez Decl.).

C.     Whether Ms. Martinez' Allegations are Actionable as Hostile Work Environment

Sexual harassment is actionable under a hostile work environment theory when the harassing conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1071 (10th Cir. 1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). There is no "mathematically precise test" for determining whether the conduct is sufficiently severe or pervasive. *Harris*, 510 U.S. at 22 (1993). Some factors to be weighed include: "the frequency

---

[6] Ms. Martinez stated in her deposition that the touching and tickling occurred "several times a week." Ex. B at 22:2. Her subsequent statement in her Declaration states that it occurred "continuously"(Doc. 116, § 2) is thus somewhat inconsistent and will be ignored by the Court. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999) (party cannot create issue of material fact through sworn statement contradicting previous deposition testimony); *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1996) (plaintiffs cannot use affidavits to contradict prior testimony and create a sham issue of facts); *see also Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997) (party cannot create genuine issue of material fact by filing affidavit that contradicts own deposition testimony).

9

of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23.  The harassing conduct must be "both objectively and subjectively abusive." *Lockard*, 162 F.3d at 1071; *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243 (10th Cir. 2001).

There are problems with Ms. Martinez' claim on both the objective and subjective levels. Also, there are major inconsistencies with her testimony which cannot withstand summary judgment, even viewing the evidence in her favor, as the Court is required to do in addressing this summary judgment motion. Eleven months after she resigned from Journeys, Ms. Martinez was contacted by an EEOC investigator. The investigator's notes from this meeting state that Martinez said she was not subject to any verbal sexual harassment. Ex. B at 11-12 and Exhibit 1 attached thereto.[7] Subsequently, at her deposition in September of 2010, she clarified this statement by explaining that Cavnar's comments "**could** be considered verbal sexual harassment."  Ex. B at 13 (emphasis added).

Ms. Martinez also stated in her deposition that, as a result of Tobias Cordova's conduct, she was "uncomfortable [being at work], and frustrated, and anxiety [sic]."  Ex. B at 51:13-15. However, Ms. Martinez had been asked previously by the EEOC interviewer whether she was subjected to any physical sexual harassment that was undesirable or offensive (giving as examples "staring, touching, embracing, hugging, pinching, wrestling or grabbing of clothing or of private parts).  Ms. Martinez responded that Tobias ticked her and she told him to stop.  Ex. 1,

---

[7] Plaintiff objects to the use of EEOC notes as hearsay, without any legal basis for the objection.  Defendant does not respond to the objection.  However, the Court overrules such an objection, since EEOC notes and reports are clearly admissions by a party-opponent under Fed. R. Evid.801(d)(2). Plaintiff disputes that the notations are correct, but Ms. Martinez offers no testimony which would create a factual dispute regarding the accuracy of these statements.

10

attached to Ex. B. The report by the EEOC interviewer stated that Ms. Martinez "was never subjected to sexual harassment." Ex. 2, attached to Ex. B. Martinez also noticed that Cordova was flirtatious and that "he would touch the girls on their waist and stomachs" in the stockroom. *Id.*

The effect on an employee's psychological well-being is a factor to consider in determining whether at employee actually found the environment abusive. *Harris*, 510 U.S. at 23. Here, however, Ms. Martinez' perception of the alleged harassment by both Cavnar and Cordova does not rise to an actionable level. Her statements at a deposition – when Ms. Martinez became a claimant in a lawsuit – are inconsistent and contradictory to her earlier statements to an EEOC investigator. Further, Ms. Martinez did not complain to anyone at Journeys or Genesco, other than Cordova, about Cordova's behavior – even though she complained about Cavnar's comments (about women being able to sell more than men) to Benjamin Reyes. This evidence indicates that Ms. Martinez did not have the requisite subjective belief that the alleged harassment was severe or pervasive enough to effectively alter the terms and conditions of her employment.

The claim fails on the objective level as well. The severity and pervasiveness of an alleged hostile work environment claim is viewed from the perspective of a "totality of the circumstances." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (citing *Harris*, 510 U.S. at 23 ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.")). The alleged harassment does not establish a hostile work environment from an objective perspective. No reasonable fact finder could find that the alleged conduct unreasonably interfered with Ms. Martinez' work performance, or altered the terms and conditions of her employment. Ms. Martinez testified that she noticed that women were being "talked to in the public" about their sales goals, but stated that male sales associates were not

11

held to a different sales goals than the women.  Ex. B at 45:10-20.  Tobias Cordova's alleged conduct no doubt was annoying to Ms. Martinez, but considering the extent and nature of this conduct, it falls short of being severe or pervasive in a Title VII sexual harassment analysis.  The alleged conduct by Cordova consisted of tickling and similar touching over Ms. Martinez' clothes, occurred a few times a week, and lasted from May to July of 2007, at which point Cordova was fired for a reason unknown to Ms. Martinez. Ms. Martinez continued to work at Journeys for another month before resigning.  *Cf, e.g.*, *Harris v. Clyburn*, 1995 WL 56634, at *2-3 (4th Cir. 1995) (occasional tickling in the hallway "may be uncomfortable or embarrassing," but it does not qualify as "sufficiently severe or pervasive" to alter conditions of employment and create an abusive working environment).

Accordingly, I find that Ms. Martinez was not subject to sufficiently severe or pervasive conduct to constitute a "hostile work environment," and Defendant would be entitled to summary judgment on that basis.  However, even if the Court were to find that the alleged conduct was actionable under Title VII, Ms. Martinez faces the insurmountable obstacle of showing that Defendant should be held liable for any of the conduct.

### IV.     Employer Liability Under Vicarious Liability and Negligence

In addition to establishing the hostile work environment elements, a plaintiff must also identify a basis for holding the employer liable under Title VII.  *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). "[A]n employer is not automatically liable for harassment by a supervisor who creates the requisite degree of discrimination." *Faragher v. City of Boca Raton*, 524 U.S. 775, 804 (1998) (quotation omitted). An employer is vicariously liable if a supervisor takes a tangible employment action against the victimized employee. *Id.* at 807-08; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760 (1998). If, however, no tangible employment action was taken against the employee, an employer may assert an affirmative defense to vicarious

liability if it can prove two elements: (1) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) the plaintiff "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. This defense is commonly known as the *Faragher-Ellerth* defense. If both Cavnar and Cordova are supervisors at Journeys, both of these Defendants could be vicariously liable under this theory.  Genesco contends that it is entitled to the *Faragher-Ellerth* defense, and thus is entitled to summary judgment.[8]

Plaintiff argues that the *Faragher-Ellerth* defense is not available to Defendant because it is only applicable to claims of vicarious liability for harassment by a supervisor[9] and notes that liability under a negligence theory is available to Plaintiff.  Under this theory, an employer may be liable if it was negligent or reckless in failing to remedy or prevent a hostile work environment of which management-level employees knew or in the exercise of reasonable care should have known. *Hirschfeld v. New Mexico Corr. Dep't*, 916 F.2d 572, 576-77 (10th Cir. 1990); *accord Jeffries v. Kansas*, 147 F.3d 1220 (10th Cir. 1998).

A.   Vicarious Liability Under *Ellerth-Faragher*

Plaintiff contends that Defendant cannot establish the elements of a *Faragher-Ellerth* defense, arguing that Defendant's policy was ineffective because employees were required to sign the sexual harassment policy, but did not receive a copy.

It is undisputed that Ms. Martinez received Genesco's anti-harassment policy to review,

---

[8] The status of Cordova as either an employee or supervisor is less clear than that of Cavnar.   Ms. Martinez described Cordova as a "manager" in her deposition. Ex. B at 21:6-9; Doc. 116, ¶ 2.  However, because Ms. Martinez' claim fails under both a vicarious liability and negligence theory, that issue need not be resolved.

[9] Plaintiff does not explain whether they are disputing that Cordova is in fact a supervisor.

and which she signed, when she began her employment at Journeys.  Ex. B (relevant portions of policy).[10]  Plaintiff, however, disputes that Ms. Martinez was actually "given" a copy.  The policy describes harassment as including "slurs, jokes, teasing, gestures, deliberate touching, display of offensive material, and other unwelcome and offensive verbal, graphic or physical conduct or behavior. . . ." *Id.*  It states that "Genesco will not tolerate illegal harassment in any form. It is a form of discrimination, a violation of federal and state law, and a serious violation of the Company's policy. Such conduct may result in disciplinary action up to and including termination." *Id.*  The policy further states:

> Genesco requires individuals report incidents of illegal harassment and provides avenues by which individuals can report complaints of illegal harassment. Genesco strongly encourages reporting of all perceived incidents of illegal harassment, regardless of who the alleged offender may be. An individual who believes he or she is the victim of illegal harassment or who witnesses illegal harassment of others should immediately discuss his or her concerns with his or her supervisor. *If the employee does not feel comfortable discussing the situation with his or her supervisor* or is not satisfied with the action taken by the supervisor, the employee should contact the Human Resources Department, Suite 264, Post Office Box 731, Nashville, Tennessee 37202-0731, or at (615) 367-7697 or via email at respect@genesco.com. *An individual is not required to discuss the concern with the alleged harasser. An individual is not required to discuss the concern with his or her immediate supervisor.*

*Id.* (emphasis added).

Finally, Genesco's anti-harassment policy states that Genesco will promptly investigate and respond to all complaints of illegal harassment, and that Genesco prohibits retaliation for such complaints.  This policy was posted on the wall of the stockroom at the Journeys store in Cottonwood Mall.  Ex. C (Cavnar Dep.) at 53:19-54.

Benjamin Reyes, the manager at Genesco's Cottonwood Mall Journeys store, showed a

---

[10] Defendant refers to an "Exhibit 4" to refer to the exhibit relating to the anti-harassment policy.  However, the Court finds no Exhibit 4 in the pleadings regarding summary judgment on Ms. Martinez' claim.  Portions of Genesco's anti-harassment policy are wedged as an exhibit between Exhibits E and F, marked as "Deposition Ex. 5" and "Exhibit C."

DVD regarding sexual harassment to his employees. Ex. E (Dep. of Benjamin Reyes) at 48:10-51:13. Ms. Martinez does not dispute that Reyes showed the DVD on some date to a group of employees, but disputes that she ever saw that DVD. Employees at the store were provided with a "new employee" handbook to review, which included an equal opportunity policy that described the procedure by which employees could complain about violations of the policy without going through their supervisor. *Id.* at 57:3-24, and Exhibit 5 thereto (handbook, pp. 10-12). Each employee's copy of this handbook was kept on a shelving unit in the restroom of the Journeys store. *See* Ex. C (Cavnar Dep). at 79:20-80:21.

Plaintiff contends that because the policy handbooks were not distributed to employees after they signed them, and because Ms. Martinez did not view the DVD regarding sexual harassment when Reyes showed it to other employees, Genesco cannot satisfy the requirements of the first part of the *Ellerth-Faragher* defense.

Plaintiff offers no evidence which creates a factual question as to whether Genesco carried out its responsibilities for the first part of the affirmative defense. Genesco's policy was disseminated to each employee who signed a copy of the policy. There is nothing in the law that requires that each employee be given a copy of the policy to take home and keep. While the availability of the affirmative defense often will turn on whether the employer had established and disseminated an anti-discrimination policy, complete with a known complaint procedure, there is some flexibility in how each employer approaches this responsibility. *See Ellerth*, 524 U.S. at 765 ("While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense."). Genesco posted a copy of the policy on its stockroom wall, where it was easily seen by employees. Genesco also kept a copy of the policy

15

in a handbook in its Journeys store. Plaintiff's effort to create a factual dispute over the fact that the handbook was kept on a shelf in the store's restroom actually backfires, in the Court's view. As a matter of accessibility, there are probably not too many places more commonly visited by employees than the restroom – and the Court is left to wonder what Plaintiff would consider to be a more appropriate place to keep the handbook as far as accessibility to employees. The policy contained a description of conduct which could constitute harassment, and a number of avenues by which an employee can report harassment, including a means for reporting harassment that did not require an employee to complaint to a supervisor. This is not a case which needs the fact finder to resolve the question of whether Defendant has satisfied its part of the affirmative defense, since the undisputed facts on their own resolve the issue. *Cf. Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 19 (1st Cir. 2002) (facts in dispute as to whether employer had anti-harassment policy with known complaint procedure, where there was no orientation regarding sex discrimination; no written policy on sexual harassment disseminated, no written policy on available grievance procedures; and no anti-harassment literature posted anywhere in the workplace).

The facts relating to the second part of the affirmative defense is equally undisputed. In analyzing whether the *Ellerth-Faragher* defense applies, a court looks to the reasonableness not only of the employer's conduct (as the Court has just done), but also that of the plaintiff victim. *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1261 (10th Cir. 1998). The question here is whether Ms. Martinez unreasonably failed to use the complaint procedure provided in Genesco's anti-harassment policy. Nowhere in Plaintiff's response on this issue are any facts relating to Ms. Martinez' claim except for Ms. Martinez' complaint about Cavnar's comments. Otherwise, the only facts offered by Plaintiff concern Genesco's allegedly inadequate efforts to respond to complaints made by Ms. Torres and Ms. Silva, and these facts are totally irrelevant to the issue

of whether Ms. Martinez complained to Genesco about harassment. Ms. Martinez never reported any alleged harassment to Genesco. The Court has previously found that Cavnar's comments simply do not qualify as harassment; thus there was no need to report such conduct. Cordova's conduct could constitute harassment if carried out on a level which does not exist here, but at any rate, it is undisputed that Ms. Martinez never reported any of Cordova's conduct to anyone at Journeys or Genesco – nor does she give any reason why she felt she could not do so. This undisputed failure to use Genesco's complaint procedure satisfies the second part of Genesco's burden under the *Ellerth-Faragher* affirmative defense. *See Ellerth*, 524 U.S. at 765 ("[W]hile proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense."); *see Nichols v. Azteca Restaurant Enters., Inc.*, 256 F.3d 864, 877 (9th Cir. 2001) (employee's failure to use a complaint procedure provided by the employer "will normally suffice to satisfy the employer's burden under the second element of the defense").

B.   Liability Under a Negligence Theory

The negligence theory is still alive and well as a theory of liability after *Ellerth* and *Faragher*, for both supervisors and employees. *See Wilson v. Tulsa Junior Coll.*, 164 F.3d 534, 540 n.4 (10th Cir. 1998) (citing *Ellerth*, 524 U.S. 742) (noting that the Supreme Court recognized "the continuing validity of negligence as a separate basis for employer liability"); *Ellerth*, 524 U.S. at 759 (noting that negligence "sets a minimum standard for employer liability under Title VII," differing from the "more stringent standard of vicarious liability").

Under a negligence theory of liability, a plaintiff must establish that his employer "had actual or constructive knowledge of the hostile work environment but did not adequately respond

17

to notice of the harassment." *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1988). A plaintiff demonstrates actual employer knowledge where the plaintiff has reported harassment to management-level employees. *Ford v. West*, 222 F.3d 767 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 673). An employer may be deemed to have constructive knowledge of harassment where the pervasiveness of the harassment supports an inference of employer knowledge. *Id.* (context of racial harassment). Here, Plaintiff argues that Genesco had constructive knowledge of Cordova's harassment of Ms. Martinez because Cavnar was in the Journeys store frequently. However, Plaintiff offers no testimony or circumstantial evidence from which a reasonable fact finder could infer that Cavnar did know or should have known of Cordova's conduct. It is undisputed that Cavnar filled in as acting store manager only for a few weeks after Cordova was fired, and his visits to the Journeys store while Cordova was working there would have been in the capacity as district or regional manager. The notion that Cavnar should happen to be at the store on the few times a week during the few moments when Cordova chose to brush up against Ms. Martinez in order to poke her in the ribs or tickle her, is almost fanciful. As a result, the argument that Cavnar should have known about Cordova's alleged conduct toward Ms. Martinez is based on speculation only and is insufficient to withstand summary judgment.

Therefore, Plaintiff has no evidence that Genesco is liable under a negligence theory.

## Conclusion

In sum, I find and conclude that Defendant's motion is denied with regard to the legal issues of exhaustion of the administrative process.

However, the remainder of Defendant's motion has merit, and will be granted. I find and conclude that Chris Cavnar's alleged conduct toward Ms. Martinez does not constitute sexual harassment, nor does Plaintiff offer any facts which would suggest otherwise.

I find that the alleged conduct by Tobias Cordova, looking at facts favorably to Plaintiff, is not severe or pervasive enough to rise to an actionable level under Title VII.

I also find and conclude that, even were the alleged conduct viewed as sexual harassment, Plaintiff cannot sustain a claim against Genesco, under either a vicarious liability theory or a negligence theory.  Genesco had in place an anti-harassment policy with complaint procedures which it provided to its employees, and thus Defendant exercised reasonable care to prevent and correct promptly any sexually harassing behavior under the first part of the *Ellerth-Faragher* defense.  However, Ms. Martinez failed to use this procedure and offers no reason as to why she did not.   As a result, Genesco would be entitled to summary judgment based on this affirmative defense even if the underlying conduct is considered actionable sexual harassment.

Finally, Plaintiff offers no facts to infer to a reasonable fact finder that Cavnar knew or should have known about Cordova's alleged conduct toward Ms. Martinez.

**THEREFORE,**

**IT IS ORDERED** that Defendant Genesco's Motion for Partial Summary Judgment Regarding Plaintiff EEOC's Claims on Behalf of Maria Martinez **(Doc. 96)** is denied on the exhaustion issues, but GRANTED as to Maria Martinez' claims against Genesco based on sexual harassment.

_____
UNITED STATES DISTRICT JUDGE