# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

       Plaintiff,

      v.                                                                     No. 09-CV-952 WJ/RHS

GENESCO, INC., d/b/a JOURNEYS,

       Defendant,

      and

LAUREN TORRES,

       Plaintiff-in-Intervention,

      v.

GENESCO, INC., d/b/a JOURNEYS,

       Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT ON CLAIMS BROUGHT ON BEHALF OF VICTORIA SILVA

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment Regarding Plaintiff EEOC's Claims on Behalf of Victoria Silva (Doc. 97). Defendant Genesco, Inc. ("Genesco") moves for summary judgment on the claims the EEOC brings on behalf of one of its class members, Victoria Silva. For the reasons explained below, the Court finds that the motion is well taken and shall be granted.

## BACKGROUND

I.      **Procedural History**

The Equal Employment Opportunity Commission ("EEOC") brings this Title VII lawsuit against Defendant Genesco, a Tennessee corporation doing business in New Mexico, on behalf of female employees of Defendant alleging retaliation and hostile work environment based on gender. Lauren Torres was the only named employee class member in the original complaint (Doc. 1). Victoria Silva was added as a class member in the EEOC's Amended Complaint (Doc. 12). In discovery, the EEOC disclosed Maria Martinez and Cassandra Brito as additional "class members." The EEOC has since withdrawn its designation of Brito as a putative class member. The Court has dismissed claims the brought on behalf of Maria Martinez, because there was no dispute of material fact as to whether Martinez was subjected to a hostile work environment and whether Genesco can be held liable for any employment violations committed by its employees (Doc. 149). As a result, the EEOC's class currently consists of two members: Torres and Silva.

Genesco moves for summary judgment on the basis that the undisputed facts show that the EEOC cannot succeed on its Title VII claim brought on behalf of Victoria Silva. Genesco argues that the harassment Silva experienced was neither "severe" nor "pervasive" enough to be actionable, and that even if it were, the company has an affirmative defense in that it had in place reasonable procedures to correct and prevent harassment and that Silva did not take advantage of them. The EEOC, in its response, argues that the issue of "severe and pervasive harassment" should go to the jury, and that the company is not entitled to an affirmative defense because its Title VII claim is not founded on respondeat superior liability such as to entitle Genesco to the affirmative defense, but on principles of negligence. In reply, Genesco replies that negligence principles do not render it liable under Title VII either, because Genesco had no notice Silva was

2

subjected to harassment.

## II. Factual History

For the purposes of this motion, the undisputed material facts are as follows. Silva worked from November 17, 2007 to December 13, 2007 at Journeys, a retail shoe store owned by Genesco. At this time, Benjamin Reyes was the store manager, and Adrian Marquez was a co-manager. Silva was the target of harassment by Marquez during this period. Each time Silva worked a shift with him, Marquez made inappropriate and crude comments concerning the females that shopped in the store, and persisted in asking Silva for dates despite her informing him that she was not interested. Marquez gave Silva a ride home from work one day, in violation of the company's anti-fraternatization policy, and informed her that the passenger door did not work and she would have to leave through the window or crawl over his lap. During this car ride, Marquez asked her for dates and made inappropriate comments about her butt. Additionally, Ben Reyes would sometimes make comments about customers' attractiveness.

Genesco's anti-harassment policy informs employees that they are not required to report harassment to their supervisor or discuss it with the alleged harasser, but may call or send a letter or an email to the company in Nashville:

> Genesco requires individuals report incidents of illegal harassment and provides avenues by which individuals can report complaints of illegal harassment. Genesco strongly encourages reporting of all perceived incidents of illegal harassment, regardless of who the alleged offender may be. An individual who believes he or she is the victim of illegal harassment or who witnesses illegal harassment of others should immediately discuss his or her concerns with his or her supervisor. *If the employee does not feel comfortable discussing the situation with his or her supervisor* or is not satisfied with the action taken by the supervisor, the employee should contact the Human Resources Department, Suite 264, Post Office Box 731, Nashville, Tennessee 37202-0731, or at (615) 367-7697 or via email at respect@genesco.com. *An individual is not required to discuss the concern with the alleged harasser. An individual is not required to discuss the concern with his or her immediate supervisor.*

3

Def.'s Fact # 5. Despite having signed a copy of this policy when she began working at Journeys, Silva was not aware of any method for reporting this harassment to the company. Silva testified in her deposition that she did not quit because of this harassment, but that she did not know she had other options to deal with the harassment other than to quit her job. The only complaint Silva remembers making concerning the harassment was a statement to Reyes that Marquez "seemed creepy":

> I had said something to Ben [Reyes] once, that Adrian [Marquez] seemed creepy, made me feel uncomfortable, and that was the only time. I just kind of – I mentioned it to Ben, that it was an uncomfortable situation each time we worked together, and he said that it was already being taken care of, and I didn't hear anything about it. . . . I told Ben, "He's a weirdo." Like we were kind of just talking, and I kind of slipped it in there, like "He's weird, like he's kind of gross, I think all the girls think that," and he had said that he had gotten that complaint before and he was doing something about it.

EEOC Ex. 16, Silva Dep. at 50:15-21, 51:4-9 (Doc. 115-20 at 5).

## LEGAL STANDARD

Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; it may not rest on mere allegations or denials in its own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249. A mere scintilla of

evidence in the nonmovant's favor is not sufficient. *Id.* at 252.

## DISCUSSION

Sexual harassment is actionable under a hostile work environment theory when the harassing conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1071 (10th Cir. 1998). There is no "mathematically precise test" for determining whether the conduct is sufficiently severe or pervasive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993). Some factors to be weighed include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. The harassing conduct must be "both objectively and subjectively abusive." *Lockard*, 162 F.3d at 1071; *see also Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243 (10th Cir. 2001). The severity and pervasiveness of an alleged hostile work environment claim is judged by the "totality of the circumstances." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005); *see Harris*, 510 U.S. at 23 ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.").

In addition to establishing the hostile work environment elements, a plaintiff must also identify a basis for holding the employer liable under Title VII for sexual harassment committed by its employees. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). One method is the doctrine of vicarious liability. The Supreme Court has held that an employer may be held vicariously liable for sexual harassment committed by a "supervisor." *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). An employer is vicariously liable if a supervisor takes a tangible employment action against the

victimized employee. *Id.* at 807-08; *Ellerth*, 524 U.S. at 760. If, however, no tangible employment action was taken against the employee, an employer may assert an affirmative defense to vicarious liability if it can prove two elements: (1) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior"; and (2) the plaintiff "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. This is commonly known as the *Faragher-Ellerth* defense.

The recognition of vicarious liability for harassment by a supervisor, however, leaves intact preexisting bases for employer liability under Title VII. The negligence theory of liability is still alive and well after *Ellerth* and *Faragher*, for harassment committed by either supervisors or other employees. *See Wilson v. Tulsa Junior Coll.*, 164 F.3d 534, 540 n.4 (10th Cir. 1998); *cf. Ellerth*, 524 U.S. at 759 (noting that negligence "sets a minimum standard for employer liability under Title VII," differing from the "more stringent standard of vicarious liability"). Under a negligence theory, an employer may be liable if it was negligent or reckless in failing to remedy or prevent a hostile work environment of which management-level employees knew or in the exercise of reasonable care should have known. *Jeffries v. Kansas*, 147 F.3d 1220 (10th Cir. 1998)*; Hirschfeld v. N.M. Corr. Dep't*, 916 F.2d 572, 576-77 (10th Cir. 1990).

## I.     Hostile Work Environment

Genesco argues that the harassment Silva experienced is not, as a matter of law, "severe" or "pervasive" enough to constitute an actionable hostile work environment under Title VII, either subjectively or objectively. The EEOC argues in response that whether harassment is "severe" or "pervasive" is a fact question for the jury, given a sufficient showing on summary judgment such that a reasonable juror could find that Silva was subjected to a hostile work

environment. "To avoid summary judgment, the nonmovant must make a showing sufficient to establish an inference of the existence of each element essential to the case." *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994). In hostile environment cases, "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is 'quintessentially a question of fact.'" *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999) (quoting *Beardsley v. Webb*, 30 F.3d 524, 530 (4th Cir. 1994)).

The subjective component of hostile work environment is satisfied when "the environment . . . is perceived[] as hostile or abusive" by the employee. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). The EEOC has created a genuine dispute of material fact with regard to whether Silva subjectively felt there was a hostile work environment at Journeys. In her declaration, Silva testifies:

> I felt that Assistant Manager Marquez' sexual comments to me and about other women and the sexual comments made by Store Manager Reyes about other women in my presence created a work environment that was hostile to women, including myself, and abusive of me, a young girl, then age 16.

Victoria Silva Decl. ¶ 2 (Doc. 117). During her deposition, she was asked whether she believed Reyes comments concerning female customers to be harassment, and she replied: "It wasn't harassment – I didn't feel like it was harassment, but coming – I think he was 24, 25, telling a 16-year-old like that he – just that he liked the body parts of customer, yeah, harassment, yes." Def.'s Ex. A, Silva Dep. at 99:1-5 (Doc. 97-1 at 15). When Genesco's counsel pressured her: "So yes or no, did you think that was harassment?"; she responded: "Yes." *Id.* at 99:6-8.

The Court finds that the testimony of the affidavit supports the EEOC's claim of a subjectively perceived hostile work environment insofar as Marquez' behavior is concerned, and that it is not contradicted by the deposition testimony. The deposition testimony, even if it were

7

inconsistent as Genesco argues, does not pertain to harassment by Marquez, but the comments made by Reyes concerning female customers at the store. Silva testifies that Marquez' harassment made her "uncomfortable, disgusted," "stressed out," and that she "didn't know what to do or what [she] could do," that "[a]ll [she] thought [she] was able to do was quit." *Id.* at 97:14, 18-19, 23-24. This testimony is sufficient to allow the subjective component of a hostile work environment claim to go to the jury. *Cf. Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (testimony sufficient where employee felt harasser's actions "made her more and more stressed out and pretty cracked, and feel terrible, that she hated the behavior, was pretty shocked, and that she just wanted to avoid the whole situation" (citations omitted) (internal quotation marks omitted)). It is sufficient to deny the instant claim that the EEOC has created a genuine dispute of fact with regard to Marquez' behavior, whether or not there is a genuine dispute with regard to Reyes' behavior.

    The EEOC argues that the following behavior by Marquez satisfies the objective component of Silva's hostile work environment claim: regular requests or suggestions for dates or a romantic relationship, including multiple propositions for dates; sexual comments about Silva's appearance, including that she was cute, and comments about her butt; sexual comments about female customers being "hot," having big breasts, or wanting to have sex with them; routine comments about other females, including referring to females as "hot momma" or "MILF," which Silva understood to stand for "Mother I would like to fuck"; and while alone in a vehicle, propositions for a relationship or dates. Silva testified that Marquez would make inappropriate comments to her every time she worked with him. Def.'s Fact # 12. The EEOC also adds that the store manager, Reyes, engaged in harassment in the form of repeated comments about the breasts of female customers and describing female customers as "hot"; and

a request that Silva approach a woman with large breasts to gauge the woman's interest in him.

This conduct amounts to more than "simple teasing," "offhand comments," or "isolated incidents," *Faragher*, 524 U.S. at 788, or "one instance of verbal harassment, standing alone," *Howley v. Town of Stratford*, 217 F.3d 141, 149 (2d Cir. 2000). While the worst of the alleged conduct occurred outside of work, it cannot be disengaged from the totality of the circumstances of Marquez' harassment. Silva and Marquez only interacted with each other during that episode because of Silva's employment with Genesco. *Cf. Braden v. Cargill, Inc.*, 176 F. Supp. 2d 1103, 1107-08, 1113 (D. Kan. 2001) (considering comments made about plaintiff's appearance that occurred outside of work).

Although it is undisputed that Silva's employment with Genesco when Marquez was around consisted of only 27.25 hours over 7 shifts between November 17 and December 13, 2007, the Court agrees that a reasonable juror could find that the conduct described above is "severe" and/or "pervasive" enough to constitute a hostile work environment. "[T]he shorter exposure time supports the equally plausible inference the abuse was so offensive as to taint the entire job site." *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 926 (10th Cir. 2001) (summary judgment denied where jury could find hostile work environment where harassment spanned three weeks and occurred at most a few minutes at the beginning and end of the day). This Tenth Circuit precedent is clearly contrary to the cases Genesco cites from other circuit courts. *See, e.g.*, *Webb-Edwards v. Orange County Sheriff's Office*, 525 F.3d 1013, 1027-28 (11th Cir. 2008) (regular, sexualized comments including those regarding an employee's appearance over an eight-week period were neither severe nor pervasive).

In addition, the EEOC argues that Silva may also rely on the harassment of others "to the extent that it affected her general work atmosphere." *Hirase-Doi v. U.S. W. Commc'ns*, 61 F.3d

777, 782 (10th Cir. 1995), *superceded in part on other grounds by Faragher*, 524 U.S. 775; and *Ellerth*, 524 U.S. 742. While this is true, it only goes to the subjective component of the analysis. *Id.* A plaintiff "may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment." *Id.* The EEOC does not, in its argument, point out any testimony by Silva establishing that she was aware of sexual harassment by Marquez directed at other female employees. Therefore, the EEOC is incorrect insofar as it attempts to bolster Silva's claim with the details of, for example, Lauren Torres' claim against Genesco without any evidence that Silva knew of the other harassment.

## II.     Employer Liability

Having found that the severity and pervasiveness of Silva's work environment at Journeys is a question for the jury, the Court must next inquire whether the EEOC has shown a sufficient basis for holding Genesco liable for that hostile work environment. As explained above, two theories are available to the EEOC: vicarious liability under *Faragher* and *Ellerth*; and negligence, which survived *Faragher*/*Ellerth* intact and for which no affirmative defense is available.

### A.     Vicarious Liability

Because neither party disputes that Marquez and Reyes were Silva's supervisors during the relevant time period, Genesco can be held vicariously liable for their harassment. 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. However, the EEOC does not argue that any tangible employment action was taken against Silva, so Genesco is entitled to an affirmative defense if it can show: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm

otherwise." *Faragher*, 524 U.S. at 807. The burden is on the defendant to establish this defense by a preponderance of the evidence. *Id.* With regard to the first element of this defense, the decision in the Court's Memorandum Opinion and Order Denying Genesco's Motion for Summary Judgment on Exhaustion Issues and Granting Motion on Maria Martinez' Claims of Sexual Harassment Under Title VII (Doc. 149) is equally applicable to the EEOC's claims brought on behalf of Silva. The Court hereby adopts that analysis by reference, and finds that Genesco has satisfied the first element of the defense as a matter of law. *See id.* at 13-16; Def.'s Facts # 1-10 (Doc. 97 at 2-4).

The Court found that Genesco has satisfied the second element of the defense with regard to Martinez' claim as well. *See* Doc. 149 at 17. "[W]hile proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Ellerth*, 524 U.S. at 765. In response to the instant motion, the EEOC argues that Silva's remark to Reyes that Marquez was "creepy" somehow defeats the second element of this defense. However, the EEOC fails to show why this remark should equate to following the reasonable complaint procedures described in Genesco's anti-sexual harassment policy. It is undisputed that Silva did not follow Genesco's reasonable complaint procedures. Def.'s Fact # 23. Therefore, Genesco cannot be vicariously liable for either Reyes' or Marquez' harassment and is entitled to summary judgment on this issue.

  **B.**  **Negligence**

The EEOC asserts that rather than pursuing a vicarious liability theory, it seeks to hold Genesco liable for its own negligence in responding to the hostile work environment at Journeys.

To prevail on a negligence theory, a plaintiff must establish, among other things, that his or her employer "had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1988) (internal quotation marks omitted). A plaintiff demonstrates actual employer knowledge where the plaintiff has reported harassment to management-level employees. *Ford v. West*, 222 F.3d 767 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 673). An employer may be deemed to have constructive knowledge of harassment where the pervasiveness of the harassment supports an inference of employer knowledge. *Id*. As part of a prima facie case of negligence, the burden is on the plaintiff to establish notice.

The EEOC bases its argument of notice on evidence that: Silva reported Marquez' harassment to Reyes; Reyes did nothing adequate to investigate the allegation or stop the harassing conduct; and district manager Chris Cavnar knew or should have known of Marquez' harassment because Cavnar was in the store frequently and actually observed both Marquez and Reyes engaging in flirtatious behavior against company policy. Doc. 121 at 15. Genesco responds that this evidence "presents an incredibly thin reed on which this argument can rest." Doc. 138 at 8. The Court agrees.

The "evidence" concerning knowledge on the part of the district manager, Cavnar, has already been found by this Court to constitute insufficient notice. *See* Doc. 149 at 18. That analysis is hereby adopted by reference. Genesco was not on notice of the hostile work environment at Journeys imposed on Silva by Marquez' sexual harassment simply because Cavnar was in the store and observed employees "flirting" with customers. *Id.*

The EEOC is hardly on firmer ground with Silva's alleged complaint to Reyes. Genesco admits that Silva, in the course of a casual conversation with Reyes, made an off-hand remark to

him that Marquez was "creepy," a "weirdo," "kind of gross," and that "all the girls think that." Def.'s Facts # 24-25. This is a far cry from a complaint of sexual harassment. A female employee may think her male coworker is creepy and weird completely independent of any actual harassment. No reasonable employer could interpret a complaint concerning someone's general demeanor to indicate that the person is a harasser. *Cf. EEOC v. Simply Storage Mgmt., LLC*, No. 09-cv-1223, 2011 WL 1343899, at *12 (S.D. Ind. Apr. 8, 2011) (inference that employee was emanating 'creepy' vibes was insufficient to put employer on notice that employee was sexually harassing his coworkers). Furthermore, to the extent that Reyes did find something actionable in Silva's "complaint," he spoke with Marquez and asked him to "stop making people feel uncomfortable." EEOC Ex. 15, Reyes Dep. at 124:7-8 (Doc. 115-19 at 11). "The test is whether the employer's response to each incident of harassment is proportional to the incident and reasonably calculated to end the harassment and prevent future harassing behavior." *Scarberry v. Exxonmobil Oil Corp.*, 328 F.3d 1255, 1259-60 (10th Cir. 2003). If the EEOC is asserting that Marquez should have been fired by Genesco for being "creepy," there is no legal support for that proposition. The Court finds that Reyes' response to Silva's "complaint" was reasonable and that the EEOC has not made out a prima facie case of negligence under Title VII. There is no basis for holding Genesco liable for the alleged sexual harassment of Silva committed by Marquez and/or Reyes.

**THEREFORE, IT IS ORDERED** that Defendant's Motion for Summary Judgment Regarding Plaintiff EEOC's Claims on Behalf of Victoria Silva (Doc. 97) is GRANTED.

_____
UNITED STATES DISTRICT JUDGE